UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HUB INTERNATIONAL MIDWEST LIMITED,

Plaintiff,

v.

Case No. 2:26-cv-2338-KCD-KRH

JUSTIN SORENSEN, ALLIANT INSURANCE SERVICES, INC.,

Defendants,

/

# ORDER

Plaintiff HUB International Midwest Limited hired Defendant Justin Sorensen in early 2023 "as a Senior Vice President and Producer, specializing in HUB's High-Growth Ventures practice." (Doc. 1 ¶ 9.)[1] Before joining the team, Sorensen signed an employment agreement that barred him from soliciting his former clients or servicing their accounts for a rival firm. (*Id.* ¶¶ 13-15.) Those commitments, however, appear fleeting. A few months ago, Sorensen abruptly resigned and joined HUB's competitor, Defendant Alliant Insurance Services, Inc. (*Id.* ¶¶ 25-27.) Several of Sorensen's clients soon followed. HUB claims that Sorensen orchestrated his exit in blatant violation of his restrictive covenants, and that Alliant tortiously aided his efforts.

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Now before the Court is HUB's motion for a preliminary injunction. (Doc. 2.) Hub seeks to enjoin Sorensen from soliciting former clients, servicing their accounts on Alliant's behalf, or weaponizing the confidential information he acquired during his tenure. (*Id.* at 21.)[2] Hub also reaches for Alliant, asking to stop the company from aiding Sorensen's contractual breaches and forbidding it from accepting any broker transfers—or any business at all—from the disputed HUB clients. (*Id.* at 22.)

## I. Legal Standard

Preliminary injunctive relief "is an extraordinary and drastic remedy" that is appropriate only in limited circumstances. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000); *see also Powers v. Sec'y, Fla. Dep't of Corr.*, 691 F. App'x 581, 583 (11th Cir. 2017) ("A preliminary injunction is the exception rather than the rule[.]"). To get injunctive relief, the movant must show (1) a substantial likelihood of success on the merits; (2) he will suffer an irreparable injury without the injunction; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction would not adversely affect the public interest if issued. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205,

[2] HUB's motion is not paginated, so the Court cites the page numbers generated by its electronic filing system.

1210 (11th Cir. 2003). These "four prerequisites" must be "clearly established." *Id.*

## II. Discussion

Starting with the merits, Sorensen insists that HUB's breach-of-contract claim rests on "conjecture." (Doc. 18 at 3.) In his telling, "HUB [seeks] to infer a breach from timing and client movement." (*Id.*) The Court would agree if that were the extent of the evidence. But the record contains far more than temporal coincidence. Email evidence confirms that at least one client, Flora & Fauna, moved its business to Alliant specifically to avoid "disruption" with Sorensen's ongoing negotiations. (Doc. 1-7 at 3.) The client explicitly instructed Sorensen to "send over the BOR (Broker of Record) ASAP to officially transfer this over." (*Id.*) That conduct falls squarely within what the employment agreement forbids: accepting a broker of record appointment or providing services to a HUB client. (Doc. 1 ¶ 13.)

In a separate email thread with Justin Abel from HUB client Tesouro, Sorensen received congratulations on his "pending move to the new firm" several days before he resigned. (Doc. 1-2.) In that same message, Abel outlined a strategy to bind coverage temporarily before "migrating to your team" a month later. (*Id.*) This exchange strongly indicates that Sorensen was laying the groundwork for his exit—and actively lining up business for his next employer—while still drawing a paycheck from HUB.

Sorensen tries to explain away HUB's evidence, but the Court is not convinced. For instance, he maintains that the exchange with Abel was an innocent courtesy call. And he was simply offering his "best efforts" to HUB by informing a long-time contact of his impending departure so the account could be seamlessly transitioned. Seriously? That sanitized narrative cannot be squared with the text. A client does not muse about migrating its business to a new team if the departing broker has just told him to stay put. Sorensen's attempt to recast this solicitation as an act of professional loyalty defies common sense. Considering the existing record, the Court is satisfied that HUB has shown at least some level of breach by Sorensen.

The same cannot be said for Alliant. HUB essentially ties Sorensen and Alliant together, treating Sorensen's actions as a joint effort. Yet the current record contains no evidence that Alliant directed, encouraged, or otherwise approved of Sorensen's conduct. Tellingly, HUB's brief omits Alliant from the merits discussion entirely. (Doc. 2 at 14-17.) To be sure, one might easily make the logical leap that a rival firm hiring a seasoned broker knows exactly how he plans to bring his clients across the street. At this stage, however, logical leaps are not enough. A preliminary injunction is a drastic remedy that demands a clear showing of proof, not mere plausible assumptions. *See, e.g.*, *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("It frequently is observed that a preliminary injunction is an extraordinary and

drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."). Because HUB lacks the necessary proof that Alliant has tortiously interfered, any injunction would be limited to Sorensen.

To put it mildly, Sorensen's innocent explanations are hard to swallow, and HUB has made an acceptable showing that he broke the employment agreement. But success on the merits is not enough for the relief sought here. Even an airtight case cannot save a preliminary injunction motion if the plaintiff fails to show irreparable harm. To justify immediate action, a court must see an injury that cannot be undone by a later award of damages. *See Sampson v. Murray*, 415 U.S. 61, 88 (1974) ("[T]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies[.]").

This is where HUB's case falls apart. Sorensen's book of business is not some abstract concept. It consists of a known, identifiable roster of clients generating a measurable revenue stream. HUB itself has quantified the stakes, claiming that Sorensen generated roughly $1.6 million in annual revenue. (Doc. 1 ¶ 10.) HUB can use the ordinary tools of discovery to figure out exactly which clients Sorensen solicited, which ones walked out the door, and just how much money went with them.

HUB does mention intangible harm. It argues that once client relationships are diverted, the resulting blow to "goodwill" and "competitive position" cannot be fixed with monetary relief. (Doc. 2 at 17.) But there is no analysis behind those assertions. Simply uttering the words "irreparable injury" does not unlock an injunction. (*Id.*) HUB fails to explain how its broader market reputation or goodwill is actually damaged by Sorensen's departure or the accounts he serviced. An asserted irreparable injury "must be neither remote nor speculative, but actual and imminent." *Siegel*, 234 F.3d at 1176. Without a concrete showing (or even argument) for how these particular breaches inflict incalculable damage to HUB's overall standing, the discernible harm remains strictly financial—and therefore compensable. *See, e.g.*, *Guy Carpenter & Co. v. John B. Collins Assocs., Inc.*, 179 F. App'x 982, 983 (8th Cir. 2006).

As it currently stands, this case is about money. HUB has made no showing of damaged goodwill, nor is there any evidence that Sorensen is using HUB's intangible intellectual property. Instead, the dispute boils down to Sorensen poaching former clients. When the universe of harm is finite—a discrete list of accounts and a measurable stream of revenue—that type of injury is fully compensable. *Cf. Morgan Stanley DW, Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1376 (N.D. Ga. 2001).

If a claimant can be made whole with a check at the end of the lawsuit, as appears to be the case here, an injunction has no place. Accordingly, HUB's Motion for Preliminary Injunction (Doc. 2) is **DENIED**.

**ORDERED** in Fort Myers, Florida on September 9, 2026.

Kyle C. Dudek
United States District Judge